IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BATSON, | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:11-cv-01226 |
| v. | ) | |
| | ) | Honorable Gary Feinerman |
| LIVE NATION ENTERTAINMENT, | ) | Magistrate Judge: Honorable Jeffrey Cole |
| INC., LIVE NATION WORLDWIDE, | ) | |
| INC. and LIVE NATION CHICAGO, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................1

II. PROCEDURAL HISTORY....................................................................................2

III. THE MATERIAL ALLEGATIONS .....................................................................2

IV. LEGAL STANDARD..............................................................................................4

V. ANALYSIS................................................................................................................4

    A. The Illinois Consumer Fraud Act (ICFA) Governs Plaintiff's Claim .....................4

        1. Plaintiff Cannot Plead A Vague Cause Of Action For "Unfair Business Practices" Not Based On The Law Of A Particular State ............4

        2. The Only State Law Potentially Applicable To Plaintiff's Claim Is The ICFA ................................................................................................5

    B. Plaintiff's ICFA Claim Fails Because Antitrust Claims Cannot Be Brought Under the ICFA .......................................................................................6

    C. The Complaint Fails to State An ICFA Claim As A Matter of Law .......................8

        1. Plaintiff's Contention That Defendants' Business Practice Violates Public Policy Is Meritless .................................................................9

            a. Plaintiff's Concession That He Cannot State An Antitrust Tying Claim Establishes That His Allegations Are Insufficient As A Matter of Law To Plead a Violation Of The Public Policy Underlying Antitrust Law .................................9

            b. Plaintiff Does Not Plead a Violation of Any Other Cognizable Public Policy ............................................................11

        2. The Second *Robinson* Factor Is Not Met Because The Amended Complaint Pleads Facts Demonstrating That The Parking Fee Is Not Oppressive As A Matter Of Law ........................................................13

        3. Plaintiff Could Have Reasonably Avoided the Alleged Injury .................14

VI. CONCLUSION.......................................................................................................15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*,
  732 F. Supp. 2d 809 (E.D. Ill. 2010) ........................................................................ 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 4, 9

*Catlin v. Hanser*,
  2011 U.S. Dist. LEXIS 28323 (S.D. Ind. Mar. 17, 2011) ........................................ 6

*Chavez v. Whirlpool Corp.*,
  93 Cal. App. 4th 363 (Cal. App. 2d Dist. 2001) ...................................................... 10

*Conley v. Gibson*,
  355 U.S. 41 (1957) ................................................................................................... 4

*Erie Railroad Co. v. Tompkins*,
  304 U.S. 64 (1938) ................................................................................................... 5

*Esser v. McIntyre*,
  169 Ill. 2d 292 (1996) .............................................................................................. 5

*FTC v. Sperry & Hutchinson Co.*,
  405 U.S. 233 (1972) ................................................................................................. 4

*Gacek v. Am. Airlines, Inc.*,
  614 F.3d 298 (7th Cir. 2010) ................................................................................... 5

*Gaebler v. New Mexico Potash Corp.*,
  285 Ill. App. 3d 542 (1996) ..................................................................................... 7

*Garrett v. Rentgrow, Inc.*,
  2005 U.S. Dist. LEXIS 13210 (N.D. Ill. July 1, 2005) ...................................... passim

*Illinois Tool Works, Inc. v. Independent Ink, Inc.*,
  547 U.S. 28 (2006) ................................................................................................... 10

*In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*,
  491 F.3d 638 (7th Cir. 2007) ................................................................................... 4

*In re Polyurethane Foam Antitrust Litigation*,
  2011 WL 3204712 (N.D. Ohio July 19, 2011) ........................................................ 7, 8

*In re Potash Antitrust Litig.*,
  667 F. Supp. 2d 907 (N.D. Ill. 2009) ....................................................................... 6

*Int'l Tax Advisors, Inc. v. Tax Law Assocs.*, LLC,
  2011 U.S. Dist. LEXIS 15018 (N.D. Ill. Feb. 15, 2011) .............................................................. 4

*Jefferson Parish Hosp. Dist. No. 2 v. Hyde*,
  466 U.S. 2 (1984) ........................................................................................................................ 10

*Klaxon v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ..................................................................................................................... 5

*Kremers v. Coca-Cola Co.*,
  712 F. Supp. 2d 759 (S.D. Ill. 2010) .................................................................................... passim

*Laughlin v. Evanston Hosp.*,
  133 Ill. 2d 374 (1990) ............................................................................................................ passim

*Nicholson v. Marine Corps West Fed. Credit Union*,
  953 F. Supp. 1012 (N.D. Ill. 1997) ............................................................................................... 5

*Oliveira v. Amoco Oil Co.*,
  201 Ill. 2d 134 (2002) ............................................................................................................ 11, 12

*Robinson v. Toyota Motor Credit Corp.*,
  201 Ill. 2d 403 (2002) .......................................................................................................... passim

*Saunders v. Michigan Ave. Nat'l Bank*,
  278 Ill. App. 3d 307 (1996) .................................................................................................. passim

*Siegel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010) ................................................................................................ passim

*Siegel v. Shell Oil Co.*,
  480 F. Supp. 2d 1034 (N.D. Ill. 2007) ..................................................................................... 7, 8

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ....................................................................................................................... 6

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................................................................................... 6

## STATUTES

Illinois Consumer Fraud Act,
  815 ILCS 505 ....................................................................................................................... passim

## RULES OF PROCEDURE

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................... 4

iii

## SECONDARY SOURCES

ABA Section of Antirust Law, Consumer Protection Law Developments (2009) ........................ 14

ABA Section of Antitrust Law,
   Antitrust Law Developments (6th ed. 2007) ............................................................................. 10

FTC Policy Statement On Unfairness (December 17, 1980) ......................................................... 14

I.  INTRODUCTION

Plaintiff, an individual music fan, attended a concert at Charter One Pavilion in Chicago, Illinois and was charged a mandatory parking fee as part of the price of his concert ticket. His original complaint claimed this was an illegal antitrust "tying" arrangement under the Sherman and Clayton Acts. But when faced with defendants' motion to dismiss and the fatal deficiencies in his antitrust claims, including his demonstrated lack of antitrust standing and inability to satisfy the elements of a tying claim, plaintiff retreated. His amended complaint, now before the Court, alleges a single, new cause of action, where plaintiff simply re-styles his deficient antitrust claim as an action for violation of "unfair business practices" law. Plaintiff alleges that he can use an "unfair business practices" cause of action to redress defendants' alleged violation of antitrust laws because "anti-tying . . . is an established concept of unfairness," and that this cause of action spares him the burden of satisfying the *actual* elements or the standing and injury limitations of antitrust law. Amended Complaint ¶ 55.

The repackaging of plaintiff's deficient allegations cannot save his complaint. Although plaintiff does not even allege a specific legal basis for his claim, the only potentially applicable state law claim for "unfair business practices" is the Illinois Consumer Fraud Act, 815 ILCS 505 ("ICFA"). But plaintiff's claim cannot survive under the ICFA because the Illinois Supreme Court has held that the legislature did not intend the ICFA to be "an additional antitrust mechanism," and thus a plaintiff cannot seek recovery for alleged antitrust injuries under the ICFA. Even if antitrust claims were within the ambit of the ICFA, the amended complaint fails to satisfy *any* of the three factors considered in determining whether a business practice is "unfair": (1) a violation of public policy, (2) oppression, and (3) substantial injury. First, concerning the alleged violation of public policy, since not all tying arrangements are deemed anti-competitive under antitrust law, plaintiff's inability to plead that the alleged "tie" is anti-competitive dooms his antitrust-based claim from the outset, and he does not plead a violation of any other cognizable public policy. Second, since plaintiff does not claim that he was coerced or intimidated into paying the parking fee—and in fact *admits* that he was free to "forego the

1

concert altogether" and take his business elsewhere if he did not want to pay the included parking fee—there was no "oppression" as a matter of law. Finally, given that he could have reasonably avoided his alleged injury by simply choosing to spend his money and time elsewhere instead of purchasing the concert ticket—as he admits he was absolutely free to do—plaintiff did not suffer cognizable injury under the ICFA.

## II. PROCEDURAL HISTORY

On February 22, 2011, plaintiff filed his original complaint alleging two counts: (1) an antitrust tying claim under the Sherman and Clayton Acts on behalf of a putative class of all consumers who purchased parking-included tickets to events at Chart One Pavilion since February 22, 2007, and (2) a violation of California's Unfair Competition Law, California Bus. & Prof. Section 17200, on behalf of a putative nationwide class of all consumers who purchased a parking-included ticket to any Live Nation event since February 22, 2007.

On May 23, 2011, defendants filed a motion to dismiss the complaint on the grounds that (i) plaintiff lacked standing to state an antitrust tying claim and failed to plead the requisite elements of such a claim under the Sherman and Clayton Acts, and (ii) plaintiff's claim under California's Section 17200 was barred by Illinois choice-of-law rules and the due process and full faith and credit clauses of the Constitution.

Plaintiff did not oppose Live Nation's motion. Instead, on July 7, 2011, he filed an amended complaint, which did not include either of the counts pleaded in the original complaint. The Amended Complaint contains a single count for "unfair business practices," on behalf of a purported class of consumers who purchased parking-included tickets to certain venues in Illinois, Florida, North Carolina and Missouri. Amended Complaint, p. 12, ¶ 88.

## III. THE MATERIAL ALLEGATIONS

Plaintiff is an individual consumer who, on July 10, 2010, walked from downtown Chicago to a concert at Charter One Pavilion, an entertainment facility located on Northerly Island in Chicago, and purchased a ticket at the box office immediately prior to the show. *Id.* ¶¶

2

28(d), 37, 38. A mandatory parking fee was included in the price of plaintiff's ticket, as it was for everyone else who purchased a ticket to the concert. *See id*. ¶¶ 45, 47, 52, 53.

Plaintiff contends that defendants' practice of including a mandatory parking fee in the price of concert tickets is actionably "unfair" because it "forces consumers to purchase the parking or forego the concert altogether"—an alleged "tying" arrangement that violates the public policy underlying antitrust law, even if it does not give rise to a cause of action under federal or state antitrust statutes. *Id*. ¶¶ 54, 55, 62. The Amended Complaint also contains numerous allegations related to defendants' alleged "control" over concert ticketing, talent, promotion, and amphitheater venues (*id*. ¶¶ 12-34), but does not plead an antitrust cause of action.

The Amended Complaint also asserts the parking fee is actionably "unfair" because, although defendants publicly disclose that a parking fee will be included in the price of tickets to events at Charter One Pavilion, this disclosure does not include the exact amount of the parking fee. *Id*. ¶¶ 67, 83. The Amended Complaint further asserts the parking fee is "unfair" for allegedly denying consumers meaningful choice with regard to transportation options (*id*. ¶ 61), selling the same parking space to different consumers at different prices (*id*. ¶ 63), providing parking spaces that are inconveniently located to the concert venue (*id*. ¶ 66), and providing fewer parking spaces than tickets sold (*id*. ¶ 69). Other public policies, such as those prohibiting drunk driving and discrimination against the disabled, are also allegedly violated by the parking fee. *Id*. ¶¶ 57, 59, 60.

Plaintiff pleads a class of "[a]ll consumers who, after January 25, 2010, were forced to pay a forced parking purchase as part of buying a concert ticket to an event at one or more of the relevant venues." *Id*. ¶ 86. The "relevant venues" for purposes of the class allegations are seven amphitheaters located in four different states that allegedly have "uniform" laws regarding "unfair" business practices: (1) Florida (Cruzan Amphitheater and 1-800-ASK-GARY Amphitheater), (2) Illinois (First Midwest Bank Amphitheater and Charter One Pavilion), (3)

Missouri (Verizon Wireless Amphitheater), and (4) North Carolina (Verizon Wireless Amphitheater and Time Warner Cable Music Pavilion). *Id.* ¶ 28.

## IV. LEGAL STANDARD

Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must contain "enough facts to state a claim to relief that is plausible on its face" and that "raise a right to relief above the speculative level." *Id*. at 555, 570. Plaintiffs must plead facts sufficient to "nudge[] their claims across the line from conceivable to plausible," or face dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id*. at 570; *see also id*. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") As the Seventh Circuit has explained, *Twombly* retired the more permissive "no set of facts" test from *Conley v. Gibson*, 355 U.S. 41 (1957) in part on a concern that it "might be invoked to condemn the defendant in an antitrust case to conducting expensive pretrial discovery, in order to demonstrate the groundlessness of the plaintiff's case." *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*, 491 F.3d 638, 649 (7th Cir. 2007).

## V. ANALYSIS

### A. THE ILLINOIS CONSUMER FRAUD ACT (ICFA) GOVERNS PLAINTIFF'S CLAIM

#### 1. Plaintiff Cannot Plead A Vague Cause Of Action For "Unfair Business Practices" Not Based On The Law Of A Particular State

The Amended Complaint carefully avoids specifying the applicable law under which he is asserting his "unfair business practice claim." Instead, plaintiff has elected to assert that defendants' conduct is "unfair" based on the factors articulated in *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233 (1972) for interpreting "unfairness" under the FTC Act, which factors have allegedly been "uniformly" adopted by the four states that are "relevant" to his claims (Florida, North Carolina, Illinois, and Missouri). Amended Complaint ¶¶ 46-50, 88. However, the FTC Act does not create a private cause of action. *See, e.g., Int'l Tax Advisors, Inc. v. Tax Law Assocs*., LLC, 2011 U.S. Dist. LEXIS 15018, *15 (N.D. Ill. Feb. 15, 2011). Nor is there a

4

federal common law cause of action under the *Sperry* factors. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Thus, if plaintiff's claim for "unfair business practices" could be stated at all, it would have to be stated under the laws of an individual state.

2. **The Only State Law Potentially Applicable To Plaintiff's Claim Is The ICFA**

Under the Erie doctrine, federal courts sitting in diversity apply substantive law of the forum state. *Id.*; *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 301 (7th Cir. 2010). This includes conflicts-of-law rules. *See, e.g., Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (a federal court exercising diversity jurisdiction applies the conflicts-of-law rules of the forum state).

To resolve conflicts-of-law issues, Illinois applies the "most significant relationship" test from the Restatement (Second) of Conflicts. *Esser v. McIntyre*, 169 Ill. 2d 292 (1996). Plaintiff is a New York resident who purchased a concert ticket in Illinois. Amended Complaint ¶¶ 1, 37. The ticket included admission to a concert at an Illinois venue and a fee for parking at a facility in Illinois, and plaintiff was allegedly injured and filed his lawsuit in Illinois. *Id.* ¶¶ 37-45. Defendants are Delaware corporations with their principal places of business in California. *Id.* ¶¶ 2-5. The Amended Complaint does not allege that plaintiff suffered an injury in any other state (including Florida, Missouri or North Carolina), nor does the Amended Complaint allege that those states, or any other, has any contact with plaintiff's alleged injury. Therefore, Illinois has the "most significant relationship" because plaintiff's alleged injury occurred in Illinois and no other state has a strong interest in applying its own laws. *See, e.g., Nicholson v. Marine Corps West Fed. Credit Union*, 953 F. Supp. 1012, 1016-1017 (N.D. Ill. 1997). Thus, as even plaintiff seems to acknowledge implicitly in the Amended Complaint, the only law applicable to plaintiff's "unfair business practices" claim based on the injury he allegedly suffered is the ICFA (815 ILCS 505). *See* Amended Complaint ¶ 49 (describing the Illinois Supreme Court's opinion in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (2002), dealing with ICFA claims, as discussing the "relevant [Illinois] law.")

5

To the extent plaintiff's complaint is also contending that plaintiff can press claims on behalf of those consumers suffering alleged injury in Florida, North Carolina and Missouri under the laws of those states, he is mistaken. A plaintiff cannot prosecute claims on behalf of injuries suffered by absent class members. *See, e.g., Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n.20 (1976) ("[t]hat a suit may be a class action, however, adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'") (*quoting Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Moreover, courts do not wait until class certification to dismiss claims that a plaintiff does not have standing to bring, but do so at the pleading stage. *See In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 923-24 (N.D. Ill. 2009) (rejecting plaintiff's argument that a court must defer consideration of Article III standing issues until after class certification, and dismissing claims under the consumer fraud laws of 43 different states because plaintiffs did not allege that they suffered injuries in those states); *Catlin v. Hanser*, 2011 U.S. Dist. LEXIS 28323, *26-27 (S.D. Ind. Mar. 17, 2011) (dismissing claims under the consumer fraud law of 33 different states for lack of standing, when plaintiff had personal standing to pursue claims only in California and Illinois.) Because plaintiff lacks standing to pursue them, defendants respectfully submit that any Florida, North Carolina and Missouri state consumer protection claims (to the extent they exist) should be dismissed.

**B. PLAINTIFF'S ICFA CLAIM FAILS BECAUSE ANTITRUST CLAIMS CANNOT BE BROUGHT UNDER THE ICFA**

The core of the Amended Complaint is plaintiff's contention that defendants' inclusion of mandatory parking fees constitutes an unfair "tying" arrangement. Amended Complaint ¶¶ 9-34, 51-56. In that regard, the Amended Complaint is identical to the original complaint but for the fact that plaintiff is now trying to plead his deficient antitrust "tying" theory under the ICFA.

This tactic fails as a matter of law because the Illinois Supreme Court has squarely foreclosed antitrust claims from being stated under the ICFA. *Laughlin v. Evanston Hosp.*, 133

Ill. 2d 374, 390 (1990). In *Laughlin*, plaintiffs attempted to state a cause of action under the ICFA for price-discrimination. The Illinois Supreme Court affirmed the trial court's dismissal of this claim based on its determination that (i) the legislature did not intend the ICFA to be "an additional antitrust mechanism," and (ii) it would be "incongruous" to permit a price-discrimination claim to proceed under the ICFA when the legislature purposely "declined to include provisions against price discrimination [in the Illinois Antitrust Act]." *Id*. at 390-91.[1]

As a subsequent Illinois appellate court explained, the core holding of *Laughlin* is that "classic antitrust allegations dressed in Consumer Fraud Act clothing" are subject to dismissal, regardless of whether the antitrust theory is price-discrimination, as it was in *Laughlin*, or some other "classic" antitrust theory like price-fixing or tying. *See Gaebler v. New Mexico Potash Corp*., 285 Ill. App. 3d 542, 543-44 (1996) (affirming dismissal of price-fixing claim brought under the ICFA, following *Laughlin*.) And as a federal district court very recently explained when dismissing a price-fixing claim plaintiffs attempted to bring under the ICFA:

> The [Illinois] supreme court specifically found '[t]here is no indication that the legislature intended that the Consumer Fraud Act be an additional antitrust enforcement mechanism.' *Laughlin*, 133 Ill.2d at 390. . . . **Illinois' highest court has foreclosed a second avenue for enforcement of the Illinois Antitrust Act**, and this Court follows suit. The [ICFA] claim is dismissed.

*In re Polyurethane Foam Antitrust Litigation*, 2011 WL 3204712, *8 (N.D. Ohio July 19, 2011) (emphasis added).

The foreclosure under *Laughlin* is clear. Indeed, defendants are aware of no Illinois state court opinion that has upheld an ICFA claim premised on an antitrust theory since *Laughlin* was decided more than 20 years ago.[2] Because a plaintiff may not bring his *admittedly* antitrust-based claim under the guise of the ICFA, the Amended Complaint must be dismissed.

---

[1] In *Laughlin*, the court also affirmed based on its finding that "unfair" conduct was not actionable by itself, where fraud or deceit was not also alleged. *Laughlin*, 133 Ill. 2d at 390. Subsequently, the Illinois Supreme Court found that plaintiffs may state a claim for "unfair" conduct absent an allegation of fraud or deceit. *Robinson*, 201 Ill. 2d at 417.

[2] *But see Siegel v. Shell Oil Co.*, 480 F. Supp. 2d 1034 (N.D. Ill. 2007) (St. Eve). In *Siegel*, defendants moved to dismiss an ICFA class claim brought on behalf of consumers who purchased gasoline at an

### C. THE COMPLAINT FAILS TO STATE AN ICFA CLAIM AS A MATTER OF LAW

Even if plaintiff were allowed to bring a deficient antitrust claim under the ICFA, the allegations in the Amended Complaint do not on their face support such a claim. The ICFA creates a private cause of action for consumers who are injured by "unfair methods of competition and unfair or deceptive acts or practices." 815 ILCS 505/2, 10a. The elements of a claim under the ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce; and (4) the practice proximately caused the plaintiff's injury. *Robinson*, 201 Ill. 2d at 417; *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010); *Garrett v. Rentgrow, Inc.*, 2005 U.S. Dist. LEXIS 13210, *6 (N.D. Ill. July 1, 2005).

Plaintiff is bringing his claim only under the "unfair" prong of the ICFA; the Amended Complaint does not allege consumer fraud or deception. *See* Amended Complaint ¶¶ 46-82. To determine whether a business practice is "unfair" under the ICFA, courts must weigh three factors: (1) whether the business practice violates public policy, (2) whether the business practice is so oppressive that the consumer has little choice but to submit, and (3) whether the business practice has caused substantial injury to consumers ("the *Robinson* factors").[3] *Robinson*, 201 Ill. 2d at 417; *Siegel*, 612 F.3d at 935.

---

artificially inflated price from several major oil companies. The claim was allowed to proceed because, according to the district court, *Laughlin* was "silent" as to "whether consumers can elect to pursue a remedy under the Consumer Fraud Act where the Illinois Antitrust Act *may also provide relief*." *Id*. at 1048 (emphasis in original). First, this statement is at odds both with *Laughlin* itself and an Illinois appellate court's interpretation of *Laughlin*, as explained above. *See also In re Polyurethane Foam Antitrust Litigation*, 2011 WL 3204712, *8 (expressly declining to follow *Siegel* because "*Laughlin* is far from silent on this point."). Second, *Siegel* does not rescue plaintiff's claim here. Plaintiff is not "electing" to pursue a colorable antitrust claim under the ICFA. Instead, he is attempting to seek a remedy under the ICFA for a patently deficient antitrust claim, which he cannot do even under *Siegel*.

[3] Although the Amended Complaint refers to the "*Sperry* factors" that are used to interpret "unfairness" under the FTC Act (*see* Amended Complaint ¶¶ 46-50), these are referred to as the "*Robinson* factors" in Illinois, as incorporated into the ICFA.

8

Under the ICFA, a court weighs each of the three *Robinson* factors in determining whether a practice is "unfair." A plaintiff must allege facts sufficient to show either that one of the factors is met to a substantial degree or that all of the factors are met at least to some degree. *See Robinson*, 201 Ill. 2d at 418. Because plaintiff fails to satisfy a single one of these factors *to any degree at all*, he has failed to plead a critical element of an ICFA cause of action, and the Amended Complaint must be dismissed.

    1. **Plaintiff's Contention That Defendants' Business Practice Violates Public Policy Is Meritless**

To be cognizable under the first *Robinson* factor, a public policy must spring from an established statute or common law doctrine that typically governs such situations. If a plaintiff "fails to point to any established statute or common law doctrine" that "typically governs such situations," then he has not implicated a public policy for the purposes of the ICFA. *Garrett*, 2005 U.S. Dist. LEXIS 13210 at *8-9 (no cognizable public policy that requires a tenant-screening service to reexamine a rejected application when applicant showed that the reason for rejecting its application was erroneous); *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 772 (S.D. Ill. 2010) (no cognizable public policy in Illinois against using high fructose corn syrup as sweetening agent in food). In other words, the ICFA does not hold defendants accountable to abstract standards of fairness that are not based on some recognized legal authority.

Plaintiff's allegations fail to implicate any cognizable public policy.

    a. <u>Plaintiff's Concession That He Cannot State An Antitrust Tying Claim Establishes That His Allegations Are Insufficient As A Matter of Law To Plead A Violation Of The Public Policy Underlying Antitrust Law</u>

Plaintiff's primary allegation is that defendants' mandatory parking fee violates the "penumbra" of antitrust tying law because "tying is against public policy." Amended Complaint ¶¶ 54, 55. First, such conclusory allegations are insufficient to "nudge" plaintiff's claim over the line from conceivable to plausible. *Twombly*, 550 U.S. at 570. Second, even if antirust claims were within the ambit of the ICFA—which they are not, as explained above—plaintiff's "tying" claim fails to implicate the public policy underlying antitrust law. That is because there is no

antitrust policy against conditioning the purchase of one good or service on the purchase of another, without more. On the contrary, it is well-settled that many tying arrangements are pro-competitive. In the absence of some restraint upon competition, the mere practice of packaging goods or services together is not unlawful. *See, e.g., Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 11 (1984) ("not every refusal to sell two products separately can be said to restrain competition"); *Illinois Tool Works, Inc. v. Independent Ink*, *Inc.*, 547 U.S. 28, 45 (2006) ("[m]any tying arrangements . . . are fully consistent with a free, competitive market"); ABA Section of Antitrust Law, Antitrust Law Developments (6th ed. 2007), pp. 175-76 ("[[t]he Supreme Court] long ago recognized that tying arrangements, unlike other arrangements condemned as per se unlawful (such as price fixing), *may be pro-competitive*") (emphasis added). Thus, plaintiff's allegation that "tying is against public policy" is false as a matter of law.

Moreover, the only way a Court can assess whether a "tying" arrangement is anti-competitive—and thus violates antitrust public policy—is to examine whether plaintiff pleads a colorable claim under "tying" jurisprudence. Otherwise, a plaintiff could assert that the very same practice that antirust laws may regard as pro-competitive constitutes a violation of antirust public policy under the ICFA. Such an obvious conflict must be avoided:

> If the same conduct is alleged to be both an antitrust violation and an 'unfair' business act or practice for the same reason--because it unreasonably restrains competition and harms consumers--the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers. To permit a separate inquiry into essentially the same question under the unfair competition law would only invite conflict and uncertainty and could lead to the enjoining of procompetitive conduct.

*Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (Cal. App. 2d Dist. 2001); *see also Laughlin,* 133 Ill. 2d at 391 (ICFA should not be interpreted in a way that conflicts with antitrust law). Here, plaintiff implicitly acknowledges that he cannot state a claim under antitrust laws. *See* Amended Complaint ¶ 55.

10

Because there is no antitrust policy against "tying" generally, and by not re-pleading his Sherman or Clayton Act claims, plaintiff implicitly acknowledges that he cannot plead an *anti-competitive* "tying" arrangement, the Amended Complaint fails to plead a violation of public policy under the first *Robinson* factor.

        b. <u>Plaintiff Does Not Plead A Violation Of Any Other Cognizable Public Policy</u>

In addition to his core "tying" allegation, plaintiff asserts that the parking fee violates a kaleidoscope of putative public welfare policies—his allegations cover everything from drunk driving and global warming, to the reduction of artistic diversity and discrimination against the disabled. *See* Amended Complaint ¶¶ 57, 59, 60. These allegations are frivolous. As an initial matter, plaintiff has not identified a single statute or common law doctrine under which any of these various policies might be implicated by defendants' parking fee. *Garrett*, 2005 U.S. Dist. LEXIS 13210, *8-9; *Kremers*, 712 F. Supp. 2d at 772. Moreover, even if there were such legal authorities, plaintiff could not assert them here. The ICFA imposes a causation and actual damages standard on private causes of action. 815 ILCS 505/10a; *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002) ("[u]nlike an action brought by the Attorney General under [the ICFA]. . . a private cause of action brought under [the ICFA] requires proof of 'actual damage'. . . [and] proof that the damage occurred 'as a result of' the [] act or practice.") Accordingly, plaintiff cannot borrow these alleged "public policies" as a way of showing unfairness for the simple reason that his alleged injury—being required to pay a $9 parking fee—was not caused by and has *nothing to do with* the claimed "violation" of alleged public policies regarding drunk driving, global warming, the reduction of artistic diversity, and discrimination against the disabled. *See* Amended Complaint ¶¶ 36(a), 44. These alleged violations of public policies are simply *non sequiturs* here.

The same is true of his allegations related to the parking arrangements at the concert. Plaintiff alleges that carpoolers collectively pay more to park than individuals who drive to the concert alone (*id.* ¶ 63), that the parking spaces are "bad" because they are not close enough to

11

the venue (*id*. ¶66), and that the parking facilities have fewer available parking spaces than concert tickets sold with the parking fee (*id*. ¶ 69). But, again, plaintiff identifies no legal authority establishing that any public policy was violated by these alleged parking arrangements. *Garrett*, 2005 U.S. Dist. LEXIS 13210, *8-9; *Kremers*, 712 F. Supp. 2d at 772. In addition, plaintiff did not drive or carpool to the concert. He walked. Thus, he was not even exposed to— much less injured by—any of these alleged violations of public policy, and cannot assert them as justification for his ICFA claim. 815 ILCS 505/10a; *Oliveira*, 201 Ill. 2d at 149.

Finally, plaintiff contends that the business practice of including parking in the price of a concert ticket is unfair because the exact amount of the parking fee should have been disclosed to him in advance of his ticket purchase. This contention is meritless. Defendants publicly disclose that a parking fee is included in the price of tickets to events at Charter One and certain other venues, as plaintiff admits. Amended Complaint ¶ 67. And plaintiff further admits that the amount of the parking fee is disclosed *on the face of the ticket itself*—his ticket stated that he paid "$9" for parking. *Id*. ¶¶ 39, 67. The notion that defendants somehow violated public policy by not *also* disclosing the exact amount of this fee in their advance marketing materials is a nonstarter. Indeed, it is common sense that if plaintiff wanted to know the exact amount of the parking fee in advance, he could and would have asked someone before purchasing the ticket. But he did not do so. Not surprisingly, plaintiff identifies no statute or common law doctrine that obligates defendants to affirmatively disclose the precise amount of the parking fee in advance. *Garrett*, 2005 U.S. Dist. LEXIS 13210, *8-9; *Kremers*, 712 F. Supp. 2d at 772.

In sum, plaintiff has failed to plead a violation of any cognizable public policy under the first *Robinson* factor, and this Court should accordingly give this factor no weight in evaluating whether defendants' practice of including parking in the price of a concert ticket is statutorily "unfair."

2. **The Second *Robinson* Factor Is Not Met Because The Amended Complaint Pleads Facts Demonstrating That The Parking Fee Is Not Oppressive As A Matter Of Law**

The second *Robinson* factor concerns whether the business practice is so "oppressive" that it "leaves the consumer with little alternative except to submit to it." *Robinson*, 201 Ill. 2d at 417; *Siegel*, 612 F.3d at 935. On this issue, the Amended Complaint alleges that the mandatory parking fee is "oppressive" because it "denies consumers meaningful choice with regard to transportation to the concert" and "forces consumers to purchase the parking or forego the concert altogether." Amended Complaint ¶¶ 45, 61, 62. In essence, plaintiff asserts that it is oppressive to leave consumers with only two options—pay the parking fee or do not attend the concert. As a matter of law, having to choose between these two options is insufficient to establish oppression.

Plaintiff does not allege that defendants engaged in any kind of coercion, intimidation, or sharp dealing related to the parking fee. In fact, plaintiff admits that he could have declined the parking fee (along with the concert ticket) and taken his business elsewhere—to a different concert or another venue for entertainment. *See id.* ¶ 62. This admission dooms his claim. At the motion to dismiss stage, courts regularly find a lack of oppression where, as here, a defendant's practice does not coerce, intimidate or otherwise deprive consumers of "meaningful choice." *Robinson*, 201 Ill. 2d at 419-20 (affirming dismissal of ICFA claim based on allegedly unfair terms included in car dealer's lease agreement, where plaintiff was not coerced into signing contract); *Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill. App. 3d 307, 317 (1996) (affirming dismissal of ICFA claim based on bank's allegedly unfair overdraft fees, where plaintiff was not "intimidated or coerced into accepting the terms"); *Garrett*, 2005 U.S. Dist. LEXIS 13210, *9-10 (granting motion to dismiss because defendant did not coerce plaintiff into submitting an apartment lease application only at the defendant's apartment complex); *see also infra* at footnote 4.

Plaintiff's theory is that he was "oppressed" by the mere fact that defendant would not sell him a concert ticket on the terms he preferred—namely, a concert ticket without a parking

13

fee included. Amended Complaint ¶¶ 45, 62. But this theory is absurd. Consumers are not entitled by law to dictate each and every term in their transactions with businesses. That is why the second *Robinson* factor does not focus on a disparity in bargaining power, without more, but on whether the consumer is left with "little alternative but to submit" to the practice. *See Robinson*, 201 Ill. 2d at 418. But there was no such undue pressure here. Since he had the option to "forego the concert altogether" and take his business elsewhere without being subjected to any coercion or intimidation from defendants, plaintiff was not oppressed as a matter of law. *Robinson*, 201 Ill. 2d 403 at 420 (no oppression where plaintiff "could have gone elsewhere to lease a car"); *Saunders*, 278 Ill. App. 3d at 314 (no oppression where plaintiff was "free to select another bank"); *Garrett*, 2005 U.S. Dist. LEXIS 13210, *10 (no oppression where plaintiff was free to rent an apartment at a different complex).

    3. **Plaintiff Could Have Reasonably Avoided The Alleged Injury**

The third *Robinson* factor concerns whether plaintiff suffered a substantial injury. *Robinson*, 201 Ill. 2d at 418. To satisfy this factor, the alleged injury must "(1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel*, 612 F.3d at 935; *Bank of Am., N.A. v. Shelbourne Dev. Group, Inc.*, 732 F. Supp. 2d 809, 825-26 (N.D. Ill. 2010). Like the second *Robinson* factor of oppression, the third element of the substantial injury inquiry considers whether consumer choice was impaired.[4] If the consumer could have reasonably avoided the injury, then the factor of substantial injury is

---

[4] This standard reflects the paramount role of consumer choice in the FTC's "unfairness" doctrine: "[n]ormally we expect the marketplace to be self-correcting, and we rely on consumer choice—the ability of individual consumers to make their own private purchasing decisions without regulatory intervention—to govern the market. We anticipate that consumers will survey the available alternatives, choose those that are most desirable, and avoid those that are inadequate or unsatisfactory." FTC Policy Statement on Unfairness (December 17, 1980) (section on "Consumer Injury"). Recognizing the importance of letting consumers make their own decisions, the FTC "does not seek to undo bad consumer choices or to constrain or make consumer choices in advance;" rather, it aims to redress practices that "provid[e] consumers with false or incomplete information, [use] high-pressure sales tactics . . . [or] exploit especially credulous or vulnerable groups of consumers." ABA Section of Antirust Law, Consumer Protection Law Developments (2009), pp. 61-62.

14

not satisfied. *E.g., Kremers*, 712 F. Supp. at 773 ("the injury caused by Coca-Cola's trade practices, if any, is one that [plaintiff], and, for that matter, any other consumer of 'Classic' Coke quite easily could have avoided, by, for example, simply drinking a different soft drink or other beverage").

Thus, plaintiff fails to satisfy the substantial injury factor for the same essential reason he fails to show oppression—he could have reasonably avoided the alleged injury by declining defendants' offer to sell him a parking-included concert ticket. *See Robinson*, 201 Ill. 2d 403 at 420; *Saunders*, 278 Ill. App. 3d at 314; *Garrett*, 2005 U.S. Dist. LEXIS 13210, *10.

## VI. CONCLUSION

For the reasons set forth above, and because plaintiff's own allegations confirm he will never be able to re-plead to allege a cognizable claim under law, defendants respectfully request that the Court dismiss plaintiff's Amended Complaint with prejudice.

Dated: August 10, 2011

Respectfully submitted,

/s/ Daniel M. Wall
Attorney for Defendants Live Nation Entertainment, Inc., Live Nation Worldwide, Inc. and Live Nation Chicago, Inc.

Daniel M. Wall (dan.wall@lw.com)
Sadik Huseny (sadik.huseny@lw.com)
LATHAM & WATKINS LLP
505 Montgomery St., Suite 2000
San Francisco, California 60606
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

Sean M. Berkowitz (sean.berkowitz@lw.com)
LATHAM & WATKINS LLP
233 South Wacker Drive, Suite 5800
Chicago, Illinois 60606
Telephone: (312) 876-7700
Facsimile: (312) 993-9767