UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES BATSON, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 1226 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| LIVE NATION ENTERTAINMENT, INC., LIVE NATION, INC., LIVE NATION WORLDWIDE, INC., and LIVE NATION CHICAGO, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This putative class action is brought by James Batson against Live Nation Entertainment, Inc. ("LNE"), Live Nation, Inc. ("LNI"), Live Nation Worldwide, Inc. ("LNW"), and Live Nation Chicago, Inc. The original complaint alleged that Defendants' practice of including the cost of parking in the price of concert tickets violated federal antitrust law and the California unfair competition statute. Doc. 1. Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Doc. 16. Rather than oppose the motion, Batson filed an amended complaint, which dropped the antitrust and California law claims and instead challenges Defendants' practice under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq*. Doc. 22. Defendants then moved to dismiss the amended complaint under Rule 12(b)(6). Doc. 23. The motion is granted.

**Background**

In considering the motion to dismiss, the court assumes the truth of the amended complaint's factual allegations but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630,

-1-

632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The court must consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are set forth as favorably to Batson as permitted by the amended complaint and the other materials that must be considered at the Rule 12(b)(6) stage.

LNE was formed following the 2010 merger of LNI and Ticketmaster, Inc. Doc. 22 at ¶ 9. At the time of the merger, LNI owned most of the amphitheaters in the United States, while Ticketmaster was the country's largest primary ticketing company and owned a controlling interest in Front Line Management Group, Inc., which manages prominent artists. *Id*. at ¶¶ 12, 15, 20. LNE manages and promotes many of the top tours in the country and has arrangements with top artists to promote their music and merchandise. *Id*. at ¶¶ 15-18. In conjunction with LNW, LNE promotes or produces over 20,000 events each year. *Id*. at ¶ 21. LNE's shows accounted for 46% of all ticket sales for major concert venues in 2009, and LNE owns the only amphitheaters in 18 of the largest 25 market regions in the country. *Id*. at ¶¶ 25-26.

On July 10, 2010, Batson purchased a ticket from Defendants to attend a concert by the musical group O.A.R. at the Charter One Pavilion in Chicago, Illinois. *Id*. at ¶ 37. Batson walked to the concert from downtown Chicago and purchased his ticket from the box office window immediately before the show. *Id*. at ¶ 38. The ticket stated, "$9 PRK PAID," did not include a transferable certificate valid for parking at the Soldier Field North Garage, did not inform Batson that he had a right to a parking space at that garage in exchange for the $9 charge,

and did not indicate the specific services or other consideration Batson would receive in exchange for the $9. *Id*. at ¶¶ 39-43.

The amended complaint alleges that Batson "lost $9 of money as a direct and proximate result of Defendants' practice of forcing consumers to purchase parking by including the parking fee in the price of the ticket." *Id*. at ¶ 44. It further alleges that Batson "was forced to either purchase parking or decline to attend the concert altogether—the tickets could not be purchased apart from the parking." *Id*. at ¶ 45. Batson calls the $9 parking fee a "forced parking charge" and asserts that it "is imposed as part of a prototypical 'tying' arrangement," explaining that "Live Nation will agree to sell the concert-ticket product, but only on the condition that the buyer also purchases a different parking product," and that "[c]onsumers cannot purchase the concert ticket apart from the parking at the relevant venues." *Id*. at ¶¶ 51-53. In addition to alleging that "[t]ying is against public policy," *id*. at ¶ 54, the amended complaint maintains that the "force parking charge" violates the public policies against drunk driving and disability discrimination, the public policy in favor of promoting environmentally friendly modes of transportation, the public policy in favor of increasing musical and artistic diversity and private-market competition, *id*. at ¶¶ 57-60. The amended complaint also alleges that "[t]he forced parking purchase is unfair because it forces consumers to purchase the parking or forego the concert altogether." *Id*. at ¶ 62.

## Discussion

The parties agree that Batson's sole individual claim is an "unfair practice" claim under the ICFA. Doc. 24 at 10-11; Doc. 31 at 2-3. "The elements of a claim under ICFA are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff

rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002)). "In addition, a plaintiff must demonstrate that the defendant's conduct is the proximate cause of the injury." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012) (internal quotation marks omitted).

The Seventh Circuit has articulated the following standard for evaluating whether conduct is "unfair" for purposes of an ICFA unfairness claim:

> A plaintiff may allege that conduct is unfair under ICFA without alleging that the conduct is deceptive. While charging an unconscionably high price generally is insufficient to establish a claim for unfairness, whether a practice is unfair depends on a case-by-case analysis. [The Supreme Court of Illinois in] *Robinson* adopted [a] three-prong test … to determine unfairness and held a defendant's conduct must: (1) violate public policy; (2) be so oppressive that the consumer has little choice but to submit; and (3) cause consumers substantial injury. 775 N.E.2d at 961.

*Siegel*, 612 F.3d at 935 (some citations omitted). "A court may find unfairness even if the claim does not satisfy all three criteria." *Siegel*, 612 F.3d at 935. "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 735 N.E.2d at 961 (internal quotation marks omitted).

Citing *Laughlin v. Evanston Hospital*, 550 N.E.2d 986 (Ill. 1990), Defendants argue that Batson's case fails at the threshold because antitrust-style claims cannot be brought under the ICFA. Doc. 24 at 11-12. There is no need to resolve that issue here because, even putting aside *Laughlin*, the amended complaint does not state a viable ICFA unfairness claim because it does not and could not satisfy the *Robinson* three-factor test for evaluating such claims.

The first *Robinson* factor asks whether the challenged practice violates public policy. "A practice can offend public policy" for purposes of the ICFA "if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *Boyd v. U.S. Bank, N.A.*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011) (internal quotation marks omitted); *see also Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. 1991) (a court addressing an ICFA unfairness claim must consider whether the challenged practice "offends public policy as established by statutes, the common law or otherwise").

Batson first contends that including the price of parking in the cost of concert tickets violates the public policy against "tying." A tying arrangement is one where a business agrees to sell one product (the tying product) on the condition that the buyer also purchase another product (the tied product). Under certain circumstances, tying violates federal antitrust law and the Illinois Antitrust Act, 740 ILCS 10/1 *et seq*. *See Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 592-93 (7th Cir. 2008); *Amalgamated Trust & Sav. Bank v. Vill. of Glenview*, 423 N.E.2d 1230, 1236 (Ill. App. 1981). As Batson recognizes, only some tying arrangements are illegal. *See Jefferson Parish Hosp. Dist. No. 2. v. Hyde*, 466 U.S. 2, 11-12 (1984) ("It is clear … that every refusal to sell two products separately cannot be said to restrain competition. … Buyers often find package sales attractive; a seller's decision to offer such packages can … be … entirely consistent with the Sherman Act."), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28 (2006); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 462 (1992) (a tying arrangement violates federal antitrust law if "the seller has appreciable economic power in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market") (internal quotation marks omitted).

The question here is whether the circumstances of this case are among those where tying violates antitrust law. A tying arrangement violates federal antitrust law if: "(1) a tie exists between two separate products; (2) the tying seller … has sufficient economic power in the tying product market to restrain free competition in the tied product market …; (3) the tie affects a not-insubstantial amount of interstate commerce in the tied product …; and (4) the tying seller … has some economic interest in the sales of the tied product …." *Reifert v. S. Cent. Wis. MLS Corp.*, 450 F.3d 312, 317 (7th Cir. 2006) (citing *Carl Sandburg Vill. Condo. Assoc. No. 1 v. First Condo. Dev. Co.*, 758 F.2d 203, 207 (7th Cir. 1985)). Batson does not and could not plausibly allege facts sufficient to satisfy the second requirement, that Defendants have sufficient power in the large-venue concert market to restrain free competition in the parking market, or the third requirement, that Defendants' practice affects a not-insubstantial amount of interstate commerce in the parking market. It follows that Defendants' pricing practice does not violate federal antitrust law.

Batson gives no reason to believe that the result would differ under state antitrust law. In fact, with respect to tying, his brief cites law review articles but no cases, state or federal, thus forfeiting any conceivable argument he might have had that Defendants' practice violates state (or federal) antitrust law. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (internal quotation marks omitted); *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003). Any argument that Defendants' practice violates state antitrust law would have failed in any event, as Illinois courts generally follow

federal precedent in interpreting the Illinois Antitrust Act. *See Baker v. Jewel Food Stores, Inc.*, 823 N.E.2d 93, 101 (Ill. App. 2005). And because the practice does not violate federal or state antitrust law, it does not violate the public policies embodied in antitrust law. *See Boyd*, 787 F. Supp. 2d at 752 (a practice violates public policy for purposes of the ICFA "if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation"); *compare Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) (California law) ("the determination that the conduct is not an unreasonable restraint of trade necessarily implies that the conduct is not 'unfair' toward consumers"), *with Hill v. PS Ill. Trust*, 856 N.E.2d 560, 569 (Ill. App. 2006) (holding that the first *Robinson* prong was satisfied where the complaint alleged that the defendant "fail[ed] to provide plaintiff with any form of statutorily-required notice that his property was being sold").

Batson next argues that Defendants' practice "violates public policies in favor of walking, biking, and public transportation" and against "drunk driving." Doc. 22 at ¶ 57; Doc. 31 at 7-8. It is difficult to fathom how levying a $9 parking charge violates any of those public policies; Batson's premise seems to be that a concert-goer who buys a ticket with an embedded $9 parking fee would drive and park rather than walk and take public transportation—just for the sake of using the space that he paid for—and then, to boot, would drink too much at the concert and drive home. That certainly is not what Batson did; he walked to the concert, bought his ticket, and then did not go back home, pick up his car, and claim his rightful parking space.

In any event, Batson cites no Illinois authority for the proposition that the ICFA makes unlawful a business practice with such a tangential and indirect effect (if any) on the public policies favoring clean transportation and disfavoring drunk driving. Adopting that theory in

this case would broaden ICFA liability under Illinois law. The Seventh Circuit has repeatedly cautioned, however, that "[w]hen we are faced with two opposing and equally plausible interpretations of state law, we generally choose the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." *Home Valu, Inc. v. Pep Boys–Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000); *accord, e.g., Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007); *S. Ill. Riverboat Casino Cruises, Inc. v. Triangle Insulation and Sheet Metal Co.*, 302 F.3d 667, 676 (7th Cir. 2002); *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 607 (7th Cir. 2000); *Birchler v. Gehl Co.*, 88 F.3d 518, 521 (7th Cir. 1996); *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc). Batson's interpretation of the ICFA is not plausible, and certainly not as plausible as Defendants' interpretation, but even if it were, the tie would have to be broken in Defendants' favor.

The amended complaint next alleges that Defendants' practice of embedding a parking fee into the ticket price violates other public policies, including those that favor "musical and artistic diversity" and "competition by other concert promoters" and those that disfavor discrimination against persons with disabilities. Doc. 22 at ¶¶ 58-60. Unlike its approach to the public policies against tying and in favor of clean transportation, Batson's brief mentions these other public policies only in passing and does not offer any argument to support his position that they can support an ICFA unfairness claim in the context of this case. *Compare* Doc. 31 at 5 (mentioning the public policies in favor of competition and artistic diversity and against disability discrimination) *with id*. at 5-8 (setting forth arguments—losing arguments, but arguments just the same—regarding the public policies in favor of green transportation and

against drunk driving). Batson therefore forfeited any reliance on those public policies in attempting to satisfy the first *Robinson* factor. *See Milligan*, 686 F.3d at 386; *Alioto*, 651 F.3d at 721; *Judge*, 612 F.3d at 557 ("We have made clear in the past that [i]t is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted); *Holm*, 326 F.3d at 877.

The Seventh Circuit has defined the second *Robinson* factor, "oppressive conduct," as conduct that leaves the consumer "little choice but to submit." *Siegel*, 612 F.3d at 935; *see Robinson*, 775 N.E.2d at 962 ("lack of meaningful choice"). The cases provide examples of such conduct. *See Hill*, 856 N.E.2d at 569 (holding that the second factor was satisfied where the challenged practice "afforded [the plaintiff] no reasonable opportunity to avoid the lien sale"); *Ekl*, 585 N.E.2d at 160-63 (same where a plumber demanded a payment 3.5 times higher than the usual rate under threat of undoing his work and turning off the plaintiff's water) (distinguished in *Robinson*, 775 N.E.2d at 962); *Case v. Ameritech Servs.*, 2004 WL 73524, at *6 (Ill. Cir. Ct. Jan. 15, 2004) (same where "neither [plaintiff] could have avoided these charges by keeping better track of their bank balance or choosing another bank with lower fees for overdrafts"); *Wendorf v. Landers*, 755 F. Supp. 2d 972, 979-80 (N.D. Ill. 2010) (same where a health club unilaterally raised its fees without affording the plaintiffs sufficient time to cancel their memberships).

At the same time, the cases make clear that the second *Robinson* factor is not satisfied where a consumer can avoid the defendant's practice and obtain alternative products or services

elsewhere. *See Siegel*, 612 F.3d at 936 (noting that *Robinson*, 775 N.E.2d at 962, held that "oppression [was] not proved because plaintiffs could have 'gone elsewhere' to lease a car and avoid defendant's penalty provisions"); *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602, 608 (Ill. App. 1996) (holding that the alleged unfair conduct, the bank's charging of certain fees, was not oppressive because the plaintiff could have selected a different bank), *disapproved on other grounds*, *Robinson*, 775 N.E.2d at 961 (holding, contrary to *Saunders*, that an ICFA unfair conduct plaintiff need not establish all three *Robinson* factors to prevail); *Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at *4 (N.D. Ill. July 1, 2005) ("Like *Robinson*, there is no oppressive or unscrupulous conduct because Garrett could have sought subsidized housing elsewhere."). As the amended complaint twice alleges, Batson and other consumers could have avoided the $9 parking fee simply by choosing not to purchase a ticket to the O.A.R. concert. Doc. 22 at ¶ 45 (alleging that Batson "was forced to *either* purchase parking *or* decline to attend the concert altogether") (emphasis added), ¶ 62 (alleging that "[t]he forced parking purchase is unfair because it forces consumers to purchase the parking *or* forego the concert altogether") (emphasis added). And it is indisputable that there were plenty of other avenues for musical and other entertainment in Chicago the evening of July 10, 2010. It follows that Defendants' inclusion of the parking fee in the ticket price does not satisfy the second *Robinson* factor. *See Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 772 n.8 (S.D. Ill. 2010) ("nobody is forcing [the plaintiff] or anybody else to purchase 'Classic' Coke").

The third *Robinson* factor asks whether the defendant's practice caused "substantial injury." To satisfy this factor, "the injury must: (1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an

injury that consumers themselves could not reasonably have avoided." *Siegel*, 612 F.3d at 935. As just noted, Batson reasonably could have avoided the $9 parking fee by not purchasing a ticket to the O.A.R. concert. He therefore cannot satisfy the third factor. *See Kremers*, 712 F. Supp. 2d at 773 (holding that the third factor was not satisfied where "the injury caused by Coca-Cola's trade practices, if any, is one that [the plaintiff], and, for that matter, any other consumer of 'Classic' Coke quite easily could have avoided by, for example, simply drinking a different soft drink or other beverage"); *Ciszewski v. Denny's Corp.*, 2010 WL 2220584, at *4 (N.D. Ill. June 2, 2010) (same where "consumers could have reasonably avoided eating at Denny's or could have opted to eat 'lighter' menu options").

To summarize, Batson's ICFA unfairness claim does not satisfy any of the three *Robinson* factors. Even if the claim somehow satisfied one of the factors, it would not do so to the degree necessary to state a viable ICFA claim. *Robinson*, 735 N.E.2d at 961 ("A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.") (internal quotation marks omitted). Accordingly, the amended complaint's ICFA claim, which is the only individual claim that Batson brings, is dismissed.

**Conclusion**

Defendants' motion to dismiss is granted. The dismissal is with prejudice for two reasons. The first is that Batson's opposition brief does not request a chance to replead. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend). The second reason is that any such request would have been denied because any

attempt to plead an ICFA unfairness claim would be futile. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997) ("Even though Rule 15(a) provides that 'leave shall be freely given when justice so requires,' a district court may deny leave to amend for … futility. The opportunity to amend a complaint is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citation and some internal quotation marks omitted).

March 13, 2013  _____
United States District Judge